124 So.2d 809

EAST ALABAMA EXPRESS CO.

v.

Cora Belle DUPES.

8 Div. 17.

Supreme Court of Alabama.

Dec. 1, 1960.

Griffin & Griffin, Huntsville, for appellee.

Camp & Berry, Huntsville, for appellant.

STAKELY, Justice.

On June 11, 1958, Cora Belle Dupes (appellee) was a passenger in an automobile driven by Doris Ray Hunter as the car was being driven in a westerly direction on

Governor's Drive in Huntsville, Alabama. At or near the intersection of Governor's Drive and Seminole Street the automobile in which Cora Belle Dupes was riding was involved in a collision with the truck which was owned by the defendant, East Alabama Express Company, a corporation (appellant).

Cora Belle Dupes filed suit in the Circuit Court of Madison County against East Alabama Express Company, a corporation, the complaint being in two counts. The first count was based on simple negligence in claiming damages for certain physical injuries, mental anguish and loss of pay. The second count was based on the alleged wilful and wanton misconduct of the defendant. The court gave the affirmative charge as to Count two of the complaint.

After the demurrer to the complaint was overruled, the defendant filed a plea of the general issue in short by consent.

The evidence introduced by the plaintiff tended to show that Cora Belle Dupes was injured physically as a result of the collision. The trial of the case resulted in verdict and judgment for the plaintiff in the amount of $4,500. This appeal followed.

Four assignments of error are argued in brief by appellant, all of which are based on rulings of the trial court on the evidence.

I. Doris Ray Hunter, a witness for the plaintiff, testified that she talked to the driver of the truck, Edward Warren, immediately after the accident and as soon as they could get out of the vehicles they were driving. She was asked the following question, "Now, I will ask you if this driver of the defendant made any statement to you as to how the accident happened?" An objection was interposed on behalf of the defendant on the grounds that such question called for immaterial, incompetent and hearsay evidence. The court overruled the objection.

After the objection was overruled the witness testified that, "He (referring to the driver of defendant's truck) said he looked off and the impact caused him to look back, or words to that effect."

■ We consider that this ruling was without error since it brought out evidence that was a part of the res gestae. Bessierre v. Alabama City G. & A. R. R. Co., 179 Ala. 317, 60 So. 82; Nelson v. State, 130 Ala. 83, 30 So. 728.

■■ While we adhere to what we have said, there is another reason why the ruling does not constitute reversible error. Later on, during the trial, Edward Warren, driver of the defendant's truck, took the stand in behalf of the defendant and on direct examination gave substantially, if not exactly, the same account of the accident. Testimony apparently illegal upon admission may be rendered prejudicially innocuous by subsequent legal testimony to the same effect or from which the same facts can be inferred. Osborn v. Grizzard, 251 Ala. 275, 37 So.2d 201; Supreme Court Rule 45, Code 1940, Tit. 7 Appendix.

We quote from the record in this connection as follows:

"Q. After seeing the light change from red to green, what, if anything, did you do, Mr. Warren? A. I glanced in my rear view mirror and back at the road, and, evidently the traffic I taken it, was moving on, and when I looked back the tail-lights of the car were sticking up there, and when I slammed on the brake I didn't have time to stop.

"Q. And you ran into the rear of Mrs. Hunter's car? A. Yes, sir."

■ II. The second and third assignments of error are based on the rulings of the court in overruling objections to two questions asked on the direct examination of the plaintiff's witness, Mrs. Doris Ray Hunter. After objection to the question asked Mrs. Hunter, "Was your car in a drivable condition after the accident?", counsel for the plaintiff said, "It is just to show the force of the impact." Counsel

for the plaintiff then said, "Let me rephrase the question, Could you drive it away from the accident or was the damage such that you were not able to drive it away after the accident?" To this question the witness replied, "I could not drive it away from the scene of the accident."

The witness was then asked, "Could you tell us why, just what the damage was?" To this question the witness then replied, "Because of the condition caused by the impact the car was not in a drivable condition."

The question was then asked, "Did you have a wrecker?", to which the witness answered, "Yes."

Tendencies of the evidence showed that the plaintiff sustained injuries associated with a certain amount of force (a whiplash and a fracture). The car in which the plaintiff was riding was struck in the rear by the truck. The type of damage and whether the car could be driven away after the accident both go to show the force of the impact. There was no error in these rulings.

III. The plaintiff was asked on redirect examination if "Following the accident on June 11, 1958, did you worry about the injuries you sustained in this accident and the state of your health as a result thereof?" The court overruled the objection interposed in behalf of the defendant based on the grounds that the question called for immaterial, irrelevant and illegal evidence and that it called for a conclusion and opinion of the witness. After the court overruled the objection the witness was allowed to testify, "Yes, I still worry a great deal about what will be the ultimate result of it."

In the case of McGuff v. State, 248 Ala. 259, 27 So.2d 241, the majority opinion held that an offer by the defendant on direct examination to prove his purpose in proceeding to a certain place to illustrate his conduct when he arrived there, was not admissible, since this was proof of his uncommunicated motive in going there. How-

ever, it was pointed out in the foregoing decision that there is a difference between such character of proof and that which goes to the physical fact and effect of fear as in Alabama Power Co. v. Edwards, 219 Ala. 162, 121 So. 543.

In Ingram v. State, 252 Ala. 497, 42 So. 2d 36, 38, it was held that the witness's testimony as to his fear was allowable, because an "involuntary physical effect" is different from the mere voluntary mental action of entertaining a motive or intention which was not communicated or otherwise expressed.

The foregoing distinction was expressly developed in Hardie v. State, 260 Ala. 75, 68 So.2d 35. The case held admissible testimony that the witness was "excited", "frightened" or "nervous" and classified these as involuntary physical effects. See 1959 (Rucker) Pocket Supp. to Wigmore, p. 36. Cited as authority in the Hardie case, supra, is not only Ingram v. State, supra, but Alabama Power Co. v. Edwards, supra ("I was scared," allowed), and also Moss v. State, 19 Ala.App. 85, 96 So. 451 (Testimony by defendant that he was "frightened" allowed).

Under the above authorities we think it is clear that the testimony here in question that the witness was worried or did worry falls in the category of "involuntary physical effect" and that the rule of exclusion does not apply.

The question remains however as to whether the type of worry sought to be proven here is a proper element of damage. In B. F. Goodrich Co. v. Hughes, 239 Ala. 373, 194 So. 842, this court held in effect that where there has been a physical injury justifying recovery of compensatory damages, damages may be recovered for mental suffering. There was, of course, proof of physical injuries in the instant case but does this allow a recovery for mental suffering by showing worry as to the future result of the injury?

It is well at this point to show the context in which the foregoing question was

asked and answered. After testifying about the injury which she sustained in the accident and her state of health as a result thereof, she was asked and answered the question which we have hereinabove set forth. She was then asked the following question, "Let me ask you specifically about the injury to the breast bone? You have testified you received an impact." To this question the witness answered, "Yes." She was then asked the following question, "Did that impact or that break make a bruise or leave a knot or anything?" To this question the witness answered, "Yes, that is the cause of my worry mainly." She was then asked the question, "Do you worry about that?" to which she answered, "Yes, I do."

In Macke v. Sutterer, 224 Ala. 681, 684, 141 So. 651, 653, this court said:

"The proposition of charge 11, refused to the appellants, is that plaintiff was not entitled to recover damages for having fear that she would have a miscarriage. If such fear was the natural consequence of her personal injury resulting proximately from defendants' negligence, it was mental anguish, and therefore an element of actual damages. * * * This charge was therefore refused without error."

See 71 A.L.R.2d 341; 15 Am.Jur., § 188, pp. 606–607.

It is true that later in the case Dr. Denton, who was called in as a consultant by Dr. Watson, testified that he never felt a knot at or near the sternum, which is the breast bone. He did testify that she did not worry intentionally and that she was concerned because she still continued to hurt and have symptoms.

We are not concerned here with any question as to the weight of the evidence or with reference to any charge given or refused by the court. We have only the proposition as to the admissibility of the question and the answer of the witness.

It seems clear to us that the objections to the question were overruled by the court without error.

Upon due consideration we think the judgment of the lower court should be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.