Howell Lumber Company, Inc., appeals from a judgment of the Tuscaloosa County Circuit Court declaring, among other things, that pursuant to Ala. Code 1975, § 11-51-91, the City of Tuscaloosa has the power to assess and collect license taxes from businesses located outside its corporate limits but within its three-mile "police *Page 1175 
jurisdiction," a term used to refer to a three-mile zone adjacent to the corporate limits of cities having 6,000 or more inhabitants. See Ala. Code 1975, § 11-40-10. The City cross-appeals that portion of the trial court's judgment directing a refund of "excess" license taxes paid by Howell Lumber during 1992, 1993, and 1994.
This appeal concerns the construction of Act No. 86-427, Ala. Acts 1986, and of § 11-51-91, Ala. Code 1975, as it appeared in the Code both before and after the passage of Act No. 86-427. Before its amendment in 1986, § 11-51-91 read, in pertinent part:
 "Any city or town within the state of Alabama may fix and collect licenses for any business, trade or profession done within the police jurisdiction of such city or town but outside the corporate limits thereof; provided, that the amount of such licenses shall not be more than one-half the amount charged and collected as a license for like business, trade or profession done within the corporate limits of such city or town, fees and penalties excluded. . . ."
Act No. 86-427 is entitled "An act [t]o amend Section 11-51-91, Code of Alabama, 1975, so as to clarify the meaning of said Section; to require a liberal construction of the meaning of said section." Act No. 86-427 is composed of three sections, one of which amends § 11-51-91 by its terms (emphasis added here to newly added language):
 "Section 1. Section 11-51-91, Code of Alabama, 1975, is hereby amended to read as follows:
". . . .
 "`Any city or town within the state of Alabama may fix and collect licenses for any business, trade or profession done within the police jurisdiction of such city or town but outside the corporate limits thereof; provided, that the amount of such licenses shall not be more than one half the amount charged and collected as a license for like business, trade or profession done within the corporate limits of such city or town, fees and penalties excluded; and provided further, that the total amount of such licenses shall not be in [an] amount greater than the cost of services provided by the city or town within the police jurisdiction; and provided further, no calculation is required to be made by the municipal officials for the cost of services to any particular business or classification of businesses within the police jurisdiction so long as the total amount of such licenses collected in the police jurisdiction shall not be in an amount greater than the cost of services provided by the city or town to the police jurisdiction. . . .'"
The second section of Act No. 86-427 reads as follows:
 "Section 2. This Act shall not apply to business [sic] or homes laying [sic] within a fire district."
The first count of Howell Lumber's original complaint in the trial court stated that its principal place of business was within the Carroll's Creek Fire District, outside the City's corporate limits but inside its police jurisdiction; that it had paid a business license tax to the City in 1992 and 1993 under protest; and that it sought a declaration of its rights and responsibilities under Ala. Code 1975, § 11-51-91, and Act No. 86-427. In other counts brought under 42 U.S.C. § 1983 and 1988, Howell Lumber sought (1) a declaration that the City's collection of license taxes was an unconstitutional denial of due process and equal protection, (2) an injunction against further imposition of the tax, (3) a refund of the taxes paid, and (4) attorney fees and costs. The City answered the complaint, and later counterclaimed, seeking a declaration that it is not required to respond to any police or fire calls within fire districts located inside its police jurisdiction.
The parties filed cross-motions for summary judgment on the issue of the applicability of § 11-51-91 to Howell Lumber. Howell Lumber took the position that § 2 of Act No. 86-427 was valid and enforceable, *Page 1176 
and prevented the City from assessing license taxes against Howell Lumber. The City disputed this position, arguing that if § 2 prohibited the imposition of business license taxes, it would create an irrational distinction between areas located within a fire district and those areas located outside such a district.
The trial court entered a partial summary judgment in favor of the City. In its five-page judgment, the trial court opined that if § 2 of Act No. 86-427 were deemed to exempt from licensing those businesses within municipal police jurisdictions that are also located in fire districts, then it would exceed the scope of the Act's title; the trial court thus elected to construe § 2 as mandating the application of a version of § 11-51-91
unamended by § 1 of the Act. The trial court also concluded that based upon our supreme court's construction of § 11-51-91 in State Dep't of Revenue v. Reynolds Metals Co., 541 So.2d 524 (Ala. 1988), Act No. 86-427 did not substantially affect the City's power to collect license taxes from businesses inside its police jurisdiction. The trial court entered a partial summary judgment in favor of the City, holding that it could assess a license tax upon Howell Lumber within the constraints of Reynolds Metals.
As a result of the partial summary judgment, later proceedings in the case focused upon the reasonableness of the license tax actually imposed by the City upon Howell Lumber. The trial court allowed Howell Lumber to amend its complaint to seek refunds of the license taxes it had paid to the City for 1994 and 1995 under Ala. Code 1975, § 40-10-164, and attorney fees under §40-10-165. After the parties briefed the remaining issues, the trial court held a final hearing, at which it received ore tenus evidence. The trial court entered a judgment declaring that Howell Lumber was entitled to a refund of $4,944.99 representing certain "excess" license taxes paid to the City, but the trial court denied relief as to Howell Lumber's federal civil rights claims and as to the City's counterclaim for a declaratory judgment. The trial court also reserved ruling upon whether Howell Lumber could recover attorney fees and expenses under § 40-10-165, Ala. Code 1975. Both parties filed motions under Rule 59, Ala.R.Civ.P., within 30 days of this judgment; in addition, Howell Lumber moved to amend its complaint to seek relief on behalf of a class under Rule 23(b)(2), Ala.R.Civ.P. After considering these motions, the trial court entered an amended judgment reducing the amount due to be refunded, denying Howell Lumber's request for attorney fees, and denying the motion to amend the complaint to assert class claims. Both Howell Lumber and the City appeal.
 Howell Lumber's Appeal
Howell Lumber contends that the trial court erred in the following respects: (1) in construing Act No. 86-427 so as to allow license taxation throughout the City's police jurisdiction, including within the Carroll's Creek Fire District; (2) in denying Howell Lumber's claims for relief under 42 U.S.C. § 1983 and associated attorney fees under 42 U.S.C. § 1988 for the allegedly wrongful collection of the license tax; (3) in denying Howell Lumber's claim for attorney fees under § 40-10-165, Ala. Code 1975; and (4) in denying Howell Lumber's motion to amend its complaint to state class claims. These allegations of error will be addressed in turn.
 I. Act No. 86-427
We first consider Howell Lumber's contention that the trial court erred in construing § 2 of Act No. 86-427. Howell Lumber argues that § 2, instead of mandating the application to it of the unamended version of § 11-51-91, Ala. Code 1975, actually prevents the collection from it of municipal license fees under §11-51-91. In other words, Howell Lumber argues that § 2, which reads "[t]his Act shall not apply to business[es] or homes [lying] within a fire district," should be read "§ 11-51-91 shall not apply to businesses *Page 1177 
or homes lying within a fire district". The City, for its part, argues that the trial court properly construed § 2, and that Howell Lumber's interpretation would create an arbitrary and irrational classification of businesses within police jurisdictions, dividing them between those businesses within a fire district and those outside such a district.
We are thus called upon to construe Act No. 86-427, and specifically § 2 thereof, to ascertain whether the Legislature intended to exclude Howell Lumber, a business located within a fire district and also within the City's police jurisdiction, from the City's license tax. Initially, we note that the first rule of statutory construction is that the intent of the legislature be given effect. Beavers v. County of Walker, 645 So.2d 1365, 1376
(Ala. 1994). In construing a statute, courts are not confined by a literal reading of the statutory words, but will reject such a reading when, after considering the law as a whole, in light of its history and the purposes to be accomplished, they determine that an exact and literal interpretation would not carry out the legislative intent. Abramson v. Hard, 229 Ala. 2, 7, 155 So. 590,593 (1934); City of Birmingham v. Hendrix, 257 Ala. 300, 311-12,58 So.2d 626, 638 (1952). Indeed, our supreme court has stated:
 "The [inartful] manner in which many of our statutes are framed, the inaptness of expressions frequently used, and the want of perspicuity and precision not unfrequently met with, often require the court to look less at the letter or words of the statute, than at the context, the subject-matter, the consequences and effects, and the reason and spirit of the law, in endeavoring to arrive at the will of the law giver."
Alabama State Bd. of Health ex rel. Baxley v. Chambers County,335 So.2d 653, 656 (Ala. 1976) (quoting Thompson v. State, 20 Ala. 54,62 (1852)). We note that if the phrase "[t]his Act shall not apply to business[es] or homes [lying] within a fire district" is construed literally, that is, as limiting only the effect of the Act itself, then the Legislature effectively left intact, as to this narrow subgroup of homes and businesses, the former prevailing law as to business licenses, both common and statutory.
Before its amendment in 1986, Ala. Code 1975, § 11-51-91, contained no pertinent express limitation upon municipal license taxation within police jurisdictions other than the limitation that such taxes amount to no more than one-half of the license taxes paid by a "like business, trade or profession done within the corporate limits of such city or town." However, at the time the Legislature passed Act No. 86-427, this statute was subject to certain constraints placed upon its operation by Alabama caselaw. Chief among these were the principles that "a city may levy a license tax upon a business in its police jurisdiction so long as it is not for the purpose of raising general revenue," and "[t]he amount of the [license] tax must reflect the reasonable compensation for the expense of municipal supervision over the particular business." Ex parte City of Leeds, 473 So.2d 1060,1061 (Ala. 1985) (emphasis added), overruled in Reynolds Metals, 541 So.2d at 532.
Section 1 of Act No. 86-427 adopts the first of these principles, and thus makes no change: "the total amount of such licenses shall not be in [an] amount greater than the cost of services provided by the city or town within the police jurisdiction." See Reynolds Metals, 541 So.2d at 532. However, the Act rejects the second caselaw principle: "no calculation is required to be made . . . for the cost of services to any particular business or classification of businesses . . . so long as the total amount of such licenses collected . . . shall not be in an amount greater than the cost of services provided by the city or town."
These two alterations — (1) the acceptance of the principle of cost of services as a basis for police jurisdiction license taxation, and (2) the rejection of the need to calculate the cost of services to a particular *Page 1178 
business or class of businesses — are the only pertinent changes to § 11-51-91 made by § 1 of Act No. 86-427. If § 2 of the Act abrogates merely the application of these two statutory changes to businesses within police jurisdictions and also within fire districts, in favor of the former statute and caselaw, then the only thing § 2 effectively preserved was the need to calculate the cost of services to a particular business.[1]
The City offers no rational reason, and this court perceives none, why the 1986 Legislature would have wanted to preserve the applicability of the Ex parte City of Leeds strict cost-benefit analysis to businesses within a fire district and simultaneously to abrogate the same analysis outside such districts. Such a construction, at the time Act No. 86-427 was passed and Ex parte City of Leeds was in force, would have led to an absurd result — each municipality in Alabama would have been required to calculate one portion of its collectible license fees under a common-law cost-benefit formula and one portion under a statutory aggregate cost formula. We note that the spirit of the law, and not its letter, is to prevail when, as here, the letter of the law will lead to injustice or absurdity. Tennessee Coal, Iron R.R. Co. v. State, 235 Ala. 152, 154, 177 So. 905, 906-07 (1937).
We now consider Howell Lumber's suggested interpretation of § 2 of the Act, which equates the term "This Act" to § 11-51-91, Ala. Code 1975. At the time the Legislature passed the Act, the Alabama Constitution of 1901 had been amended to allow citizens of 11 counties to form fire districts outside incorporated municipalities.[2] These amendments to the Constitution authorized the establishment of rural fire districts, and generally either permitted direct collection of preset taxes for fire protection within these districts or empowered some governing body (either of the district or of the county) to assess taxes or fees for fire protection. It was a legislator from Jefferson County, one of the counties in which fire districts are constitutionally authorized, who offered the text of § 2 as an amendment to the original House bill that would later become the Act. 1986 House Journal, p. 434.
In contrast to the City's literal interpretation of § 2 of Act No. 86-427, Howell Lumber's suggested construction is more rational and gives meaning to all portions of the statute. It is more plausible that the Legislature intended to relieve businesses such as Howell Lumber that are located within fire districts of the burdens of double taxation than that the Legislature wished to maintain municipal license taxation in these districts under a former statutory and common-law regime it expressly discarded in all other areas of police jurisdictions.[3] We further note that the City is expressly authorized by Act No. 94-539, Ala. Acts 1994, a local act, to collect a fee of $500 per fire call within its police jurisdiction, lessening any financial hardship the City might incur in providing firefighting services in a given instance to businesses within the Carroll's Creek Fire District. Moreover, because Act No. 86-427 is a law pertaining to taxation, specifically *Page 1179 
license taxation, we are bound to strictly construe it in favor of Howell Lumber as the taxpayer and against the City as the taxing authority. See Gotlieb v. City of Birmingham, 243 Ala. 579,582, 11 So.2d 363, 364-65 (1943).
Finally, we reject the trial court's opinion that Howell Lumber's interpretation of § 2 of Act No. 86-427 would violate the "one-subject" provision of § 45 of the Alabama Constitution of 1901. It is well settled that where, as here, "a bill by its title purports to amend a numbered section of the Code, the attention of the legislator is directed to the statute, thus identified, and he may expect the amendment to deal with any feature of the existing section," including its territorial applicability. See Taylor v. Johnson, 265 Ala. 541, 543, 93 So.2d 143, 145 (1957).
In summary, we find it more likely that the Legislature's intent at the time it enacted § 2 of Act No. 86-427 was to relieve businesses such as Howell Lumber that are simultaneously located within a fire district and a police jurisdiction from the duty to pay two authorities in advance for fire protection, and not to establish two conflicting rules for calculating license taxes in different parts of the same police jurisdiction. We therefore reverse the trial court's construction of Act No. 86-427 and direct the trial court on remand to declare that Howell Lumber is entitled to refunds from the City of those license taxes Howell Lumber has paid under protest since 1992 and for which Howell Lumber's claims for refund were otherwise properly brought within the trial court's jurisdiction.
 II. Requests for relief under 42 U.S.C. § 1983 and 1988
We next address Howell Lumber's entitlement to relief under42 U.S.C. § 1983, and the related question of its entitlement to attorney fees under 42 U.S.C. § 1988. In the counts of its complaint seeking relief for alleged federal constitutional violations, Howell Lumber sought declaratory, injunctive, and monetary relief based upon alleged unconstitutional denials of due process and equal protection resulting from the City's unlawful assessment of license taxes upon it. However, the United States Supreme Court has recently ruled that § 1983 may not be used as a vehicle for obtaining such relief. In National Private Truck Council, Inc. v. Oklahoma Tax Comm'n, 515 U.S. 582, 115 S.Ct. 2351
(1995), a unanimous Court specifically stated that "[w]hen a litigant seeks declaratory or injunctive relief against a state tax pursuant to § 1983 . . . state courts, like their federal counterparts, must refrain from granting federal relief under § 1983 when there is an adequate legal remedy." 515 U.S. at 592,115 S.Ct. at 2357. Moreover, the Truck Council Court cited its former opinion in Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100 (1981), for the proposition that "Congress never authorized federal courts to entertain damages actions under § 1983 against state taxes when state law furnishes an adequate legal remedy." 515 U.S. at 587, 115 S.Ct. at 2354-55.
While the Court did not expressly state in Truck Council that state courts are barred from entertaining § 1983 actions for damages arising from allegedly illegal state taxes, a number of opinions issued by courts in our sister states have concluded that the United States Supreme Court has foreclosed the use of § 1983 as a vehicle for any relief where the state has provided an adequate remedy. See New England Legal Foundation v. City of Boston,423 Mass. 602, 614-15, 670 N.E.2d 152, 160-61 (1996) (denying attorney fees under 42 U.S.C. § 1988 to prevailing party in taxation action; collecting authorities); Buckley Powder Co. v. State,924 P.2d 1133, 1138 (Colo.Ct.App. 1996) (McNary bar to damages actions applies by implication in state courts), cert. granted (Colo., Oct. 15, 1996); General Motors Corp. v. City of Linden, 143 N.J. 336,344-46, 671 A.2d 560, *Page 1180 
564-65, cert. denied, 519 U.S. 816, 816, 117 S. Ct. 66 (1996). We note that Alabama has an adequate statutory procedure for recovering taxes illegally assessed or collected by a municipality, §40-10-164, Ala. Code 1975, as well as "such costs as may . . . be awarded, adjudged, or decreed," id. § 40-10-165, and that Howell Lumber sought relief under these statutes. Although §§ 40-10-164
and 40-10-165 do not allow for the recovery of attorney fees (as we explain below), we conclude that they are "adequate remedies" within the meaning of McNary and Truck Council. See Jade Aircraft Sales, Inc. v. Crystal, 236 Conn. 701, 708-09, 674 A.2d 834,838 (1996) (state statutes' allowance of attorney fees not prerequisite to finding of adequate remedy); New England Legal Foundation, supra; Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503,512 (1981) (to be adequate, a state remedy need only satisfy "minimal procedural criteria"). Accordingly, we affirm that portion of the trial court's judgment denying relief under42 U.S.C. § 1983 and § 1988.
 III. Attorney Fee Request under Ala. Code 1975, § 40-10-165
Likewise, we hold that the trial court correctly refused to award attorney fees to Howell Lumber based upon its contention that the language in § 40-10-165, Ala. Code 1975, allows the award of attorney fees. This statute provides that a successful party in an action brought under § 40-10-165, Ala. Code 1975, may recover "such costs as may . . . be awarded, adjudged, or decreed."
Attorney fees are recoverable under Alabama law as part of the costs of an action only where (1) they are authorized by statute, (2) they are provided for in a contract, (3) they can be awarded by special equity, such as a proceeding where the efforts of an attorney create a fund out of which fees may be paid, or (4) litigation results in a benefit to the general public or renders a public service. Eagerton v. Williams, 433 So.2d 436, 450 (Ala. 1983); Dandy's Discount Package Store, Inc. v. Sizemore,597 So.2d 1370, 1372 (Ala.Civ.App. 1992). Howell Lumber argues only the potential applicability of the statutory exception, contending that the term "costs" in § 40-10-165 is broad enough to include attorney fees.
We note that the term "costs" has been interpreted in estate litigation so as to allow attorney fees. See Hart v. Jackson, 607 So.2d 161, 164 (Ala. 1992) (construing Ala. Code 1975, § 43-8-196). However, we note that the practice of awarding attorney fees under § 43-8-196 is based principally upon the existence of a trust relationship between an executor and beneficiaries of a decedent's estate, which relationship implicates the trial court's discretion under § 34-3-60, Ala. Code 1975, to award attorney fees in trust litigation. Hart, supra. In the absence of any trust relationship, "[t]here is no authority in this state to include attorneys' fees in the term `costs'" when used in a statute or court rule. See Mass. Appraisal Servs., Inc. v. Carmichael, 372 So.2d 850, 852 (Ala. 1979); accord, White v. State, 294 Ala. 502, 504, 319 So.2d 247, 248 (1975) (construing term "costs" in eminent domain statute as excluding attorney fees), cert. denied, 424 U.S. 954 (1976). In light of this binding authority, we conclude that it is for our supreme court, not this court, to decide whether to expand the Hart trust relationship exception to the general rule that a statutory allowance of "costs" does not include attorney fees.
Additionally, while we affirm the trial court's denial of attorney fees in this case, nothing in our affirmance as to this issue should be read as limiting the discretion of trial courts to certify classes of similarly situated litigants under the provisions of Rule 23, Ala.R.Civ.P., and to award a reasonable attorney fee from the proceeds of a common fund obtained as a result of such litigation. See Eagerton, 433 So.2d at 450. Indeed, had this action originally been brought on behalf of a class, or timely *Page 1181 
amended to raise class claims, we would have had no hesitation in concluding that such an award was within the trial court's discretion. However, we agree with the trial court's construction of § 40-10-165, Ala. Code 1975, and affirm the judgment as to this issue.
 IV. The Motion to Amend
Finally, we consider the trial court's denial of Howell Lumber's "Second Motion to Amend" its complaint so as to assert refund claims on behalf of a class of "all business entities . . . located in the police jurisdiction of the City of Tuscaloosa, which have purchased business licenses from the City of Tuscaloosa for the license years 1992, 1993, and 1994." This proposed amended complaint was filed on January 11, 1996, over two and one-half years after the original complaint; moreover, it was filed over a month after the trial had concluded, and two days after the trial court had entered its judgment that reserved only the issue of a possible award of attorney fees for later resolution.[4]
"[I]t is only when a party shows that the trial court abused its discretion in . . . denying the amendment that the reviewing court will reverse the trial court's decision." Ex parte Thomas,628 So.2d 483, 485-86 (Ala. 1993). Moreover, "[t]he trial court acts within its discretion so long as its disallowance of the amendment to the pleadings is based upon some valid ground, such as actual prejudice or undue delay." Id. at 486. In this case, we note that the trial court found that the City would have approached and defended this action differently had it been dealing with a class action. Also, we recognize that Rule 15(a), Ala.R.Civ.P., provides that once the 42d day before the first setting of a case for trial has passed, "a party may amend a pleading only by leave of court, and leave shall be given only upon a showing of good cause." Howell Lumber's amendment, "coming, as it did, less than 42 days before the initial trial setting, was not an amendment of right." Ex parte Golden, 628 So.2d 496, 498
(Ala. 1993). Finally, although it is clear that "a motion to amend should be made as soon as the necessity for altering the pleading becomes apparent," Burkett v. American Gen. Fin., Inc.,607 So.2d 138, 141-42 (Ala. 1992), Howell Lumber concedes on appeal that it intended to seek class relief as early as August 1994, but did not amend its pleadings so as to communicate this intent. "The liberalized rules of procedure have not eliminated pleadings as the principal means by which the parties choose the issues that they wish to litigate." Rutley v. Country Skillet Poultry Co.,549 So.2d 82, 84 (Ala. 1989). We therefore conclude that the trial court's denial of Howell Lumber's "Second Motion to Amend" was not an abuse of discretion, and affirm as to this issue.
 The City's Cross Appeal
The City has cross appealed from the trial court's judgment, seeking the following alternative forms of appellate relief: (1) removal of the cost-of-services limitation upon police jurisdiction license taxes set forth in Reynolds Metals and in § 11-51-91 as amended; (2) overruling of the "incremental costing" approach to determining the cost of services provided by a city within its police jurisdiction outlined by our supreme court in City of Prattville v. Joyner, 661 So.2d 1158 (Ala. 1995); and (3) limitation of Joyner to prospective application. We note that the City anticipated that Howell Lumber's appeal and its cross appeal would be heard by our supreme court, and not this court; our supreme court would have the power to limit or overrule Reynolds Metals or Joyner in the manner the City seeks. This court does not have that power (see Ala. Code 1975, § 12-3-16), and we are bound to follow Reynolds Metals and Joyner, both of which are contrary to the City's positions. We therefore affirm the judgment *Page 1182 
of the trial court as to the issues raised in the City's cross appeal.
 Conclusion
In summary, the trial court's judgment is reversed to the extent that it allows the City to collect license taxes from Howell Lumber, and the trial court is directed on remand to declare that Howell Lumber is entitled to refunds from the City of those license taxes Howell Lumber has paid under protest since 1992 and for which Howell Lumber's claims for refund were otherwise properly brought within the trial court's jurisdiction. In all other respects, the judgment of the trial court is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Yates, Monroe, Crawley, and Thompson, JJ., concur.
[1] That our supreme court overruled Ex parte City of Leeds in Reynolds Metals two years later only strengthens this court's conclusion that the Legislature did not intend for municipalities to receive the "mixed blessing" of being able to collect license fees within police jurisdiction fire districts, but only subject to the strict cost-benefit analysis of Ex parte City of Leeds.
[2] These counties were: Jefferson, Shelby, Tuscaloosa, Baldwin, Limestone, Madison, Montgomery, Russell, Lee, Etowah, and Jackson. See Ala. Const. amends. 239, 343, 358, 365, 369, 371, 378, 379,381, 392, 432, 436, and 445. Additionally, Clarke and Elmore counties would be similarly authorized pursuant to amendments submitted to the electorate after the 1986 regular legislative session, at which Act No. 86-427 was passed. Id. amends. 464, 466.
[3] Indeed, the number of counties in which fire districts outside municipalities are authorized has only increased since 1986. See Ala. Const. amends. 501, 505, 528, 532, 561, 572, and614.
[4] We incidentally note that this judgment was "final" for the purposes of appeal. See Holman v. Bane, 698 So.2d 117 (Ala. 1997).