Howell Lumber Company, Inc. ("Howell Lumber"), and the City of Tuscaloosa ("the City") appealed to the Court of Civil Appeals from a judgment entered by the trial court after a bench trial. The Court of Civil Appeals affirmed the judgment in part and reversed it in part. Howell Lumber Co. v. City of Tuscaloosa,757 So.2d 1173 (Ala.Civ.App. 1997). Both parties then petitioned for certiorari review, and we granted their petitions. We affirm in part and reverse in part the judgment of the Court of Civil Appeals, and, as to case no. 1961569, we remand.
 I. Factual Background and Procedural History
This litigation arises as a result of a taxation scheme through which the Alabama Legislature has given a municipality the authority to collect license fees from businesses, trades, or professions located outside the municipality's corporate limits, but within its police jurisdiction, subject to two limitations: (1) that the amount of such license fees should not be more than one-half of the amount of the license fees charged and collected for similar entities within the corporate limits; and (2) that the total amount of such license fees should not be greater than the cost of the services provided by a municipality within its police jurisdiction. See § 11-51-91, Ala. Code 1975, initially enacted over 50 years ago.
In the years since § 11-51-91 was enacted, this Court, through a line of cases, beginning with Alabama Power Co. v. Cityof Carbon Hill, 234 Ala. 489, 175 So. 289 (1937), and Hawkins v.City of Prichard, 249 Ala. 234, 30 So.2d 659 (1947), and culminating with Ex parte City of Leeds, 473 So.2d 1060 (Ala. 1985), held that a municipality must be able to relate the license fee levied upon a particular business within the police jurisdiction but outside the city limits to the cost of municipal services rendered in the past to that business at its physicalplant. In an obvious effort to nullify the effect of that line of cases, the Legislature amended § 11-51-91 in 1986 to eliminate the requirement that a municipality calculate the cost of services provided to any particular business within its police jurisdiction, so long as the total amount of the license fees collected in the *Page 1184 
police jurisdiction did not exceed the cost of services provided by the municipality to the police jurisdiction. See Act No. 86-427, Ala. Acts 1986 ("the Act"), amending § 11-51-91. Ironically, this Court overruled the City of Leeds line of cases just two years later, in State Department of Revenue v. Reynolds Metals Co.,541 So.2d 524 (Ala. 1988). In Reynolds Metals, this Court replaced the requirement of a per-business determination with a presumption of reasonableness when the total receipts from license fees within the police jurisdiction do not exceed the amounts estimated to be reasonably necessary to provide municipality services to the police jurisdiction. The Court stated:
 "The standard to be applied, to cases arising before or after the April 29, 1986, amendment to Code 1975, § 11-51-91, is as follows:
 "A municipality must estimate the amount reasonably necessary to provide for the protection of the lives, health, and property of businesses and residents, and for the maintenance of good order and the preservation of public morals within its entire police jurisdiction. The municipality may then, by a properly adopted ordinance or resolution, set a license fee for businesses within its police jurisdiction, but outside its city limits, so that the total receipts from all such licenses do not exceed the amounts estimated to be reasonably necessary to provide these services to the police jurisdiction. No license fee charged to any business within the police jurisdiction, but outside the city limits, shall be more than one-half of the license fee charged to a similar business within the city limits. Such ordinances shall be presumed to be reasonable, and the burden shall be upon the business challenging the license fee charged to it to prove that such license fee is unreasonable or that the ordinance was illegally adopted or is violative of the statutory or fundamental law of the United States or the State of Alabama."
541 So.2d at 532.
Howell Lumber is a business located outside the corporate limits of the City, but within its police jurisdiction. Howell Lumber also is located within the Carroll's Creek Fire District.[1] An ordinance of the City requires businesses located in the City's police jurisdiction to purchase a business license. The purpose of the tax generated by these business licenses, the City says, is to pay for municipality services, such as police and fire protection, provided to businesses located outside the Tuscaloosa city limits but inside the Tuscaloosa police jurisdiction. Howell Lumber did not pay this license tax until October 1992, when it was required by the Tuscaloosa Revenue Department to do so.
Howell Lumber subsequently sued the City, asking the circuit court to declare that the City's collection of the license taxes from it for the years 1992, 1993, and 1994 was prohibited under § 2 of Act No. 86-427, amending § 11-51-91. Howell Lumber also made claims under 42 U.S.C. § 1983 and 1988, seeking (1) a declaration that the City's collection of a license tax from it was an unconstitutional denial of due process and equal protection; (2) an injunction against further imposition of the tax; (3) a refund of the license taxes it had paid for 1992, 1993, and 1994; and (4) attorney fees. The City counterclaimed, seeking a declaration that it was not required to respond to any police or fire calls within fire districts located within its police jurisdiction.
Before its 1986 amendment, § 11-51-91 stated:
 "Any city or town within the state of Alabama may fix and collect licenses for any business, trade or profession done *Page 1185 
within the police jurisdiction of such city or town but outside the corporate limits thereof; provided, that the amount of such licenses shall not be more than one half the amount charged and collected as a license [sic] for like business, trade or profession done within the corporate limits of such city or town, fees and penalties excluded. . . ."
The 1986 Act reads:
"AN ACT
 "To amend Section 11-51-91, Code of Alabama, 1975, so as to clarify the meaning of said Section; to require a liberal construction of the meaning of said Section.
"Be It Enacted by the Legislature of Alabama:
 "Section 1. Section 11-51-91, Code of Alabama, 1975, is hereby amended to read as follows:
 "`§ 11-51-91. Establishment and collection of license for conduct of business, trade or profession outside corporate limits of municipality.
 "`Any city or town within the state of Alabama may fix and collect licenses for any business, trade or profession done within the police jurisdiction of such city or town but outside the corporate limits thereof; provided, that the amount of such licenses shall not be more than one half the amount charged and collected as a license [sic] for like business, trade or profession done within the corporate limits of such city or town, fees and penalties excluded; and provided further, that the total amount of such licenses shall not be in amount [sic] greater than the cost of services provided by the city or town within the police jurisdiction; and provided further, no calculation is required to be made by the municipal officials for the cost of services to any particular business or classification of businesses within the police jurisdiction so long as the total amount of such licenses collected in the police jurisdiction shall not be in an amount greater than the cost of services provided by the city or town to the police jurisdiction. . . . This section shall be given a liberal construction to effectuate its purpose and meaning.'
 "Section 2. This Act shall not apply to business [sic] or homes laying [sic] within a fire district."
(Emphasis supplied to language added by the Act to § 11-51-91.)
The parties filed cross motions for summary judgment on the issue of the applicability of § 11-51-91, as amended, to Howell Lumber. The trial court entered a partial summary judgment in favor of the City. The trial court held that if § 2 of the Act were deemed to exempt from licensing those businesses located within both a municipal police jurisdiction and a fire district ("fire-district occupants"), then § 2 would exceed the scope of the Act's title. The trial court thus construed § 2 of the Act to mean that the amended version of § 11-51-91 would not apply to fire-district occupants. The court held instead that theunamended version of § 11-51-91 would remain in effect for fire-district occupants, while the amended version of the statute would apply to all other businesses in the police jurisdiction. The trial court further held, based upon Reynolds Metals, that the Act did not substantially affect the City's power to collect license taxes from businesses such as Howell Lumber; it wrote:
 "Accordingly, even though the Court concludes, as explained hereinabove, that the `version' of Section 11-51-91 to which the Plaintiff is subject would be that which existed prior to the phrases and clauses added thereto by [Act No.] 86-427, the effect of Reynolds Metals Co. is to invest and imbue that version of that Code Section with essentially the same attributes as 86-487 served to apply to all businesses or homes located within a police jurisdiction but `laying [sic] within a fire district.'" *Page 1186 
Partial Summary Judgment entered on August 25, 1994 (C.R. 72-73).
After the court had entered the partial summary judgment, proceedings focused upon the reasonableness of the license taxes actually imposed upon Howell Lumber. Howell Lumber amended its complaint to seek a refund of the license taxes it had paid in 1995 and an award of attorney fees pursuant to § 40-10-165, Ala. Code 1975. The court conducted a thorough bench trial, during which the court heard ore tenus testimony from officials representing the City's revenue, fire, police, and inspection departments; from the plaintiff's corporate representative, another business owner in the area, and officials from area volunteer fire departments; and from the expert witnesses retained by the parties, each of whom testified regarding the accounting practices he considered appropriate for making the calculations necessary in this case and the manner in which he had calculated the City's cost of providing services to its police jurisdiction and the revenues received from police-jurisdiction business licenses.
The trial court wrote a comprehensive opinion. It stated that although it had "interpreted . . . Section 2 of Act 86-427 so as to prevent that amendatory act from applying to businesses or homes lying within a fire district, the effect of Reynolds Metals
[was] to reimpose those amendatory provisions, by judicial fiat." Order entered on June 9, 1996 (C.R. 349). The trial court then concluded that it was bound to apply to this case the "concept of `incremental' cost accounting" discussed by this Court in City ofPrattville v. Joyner, 661 So.2d 1158 (Ala. 1995).[2] Order entered on June 9, 1996 (C.R. 358). After discussing the merits of the testimony presented by the parties' expert witnesses, the court calculated an amount of excess license taxes and held that the City must refund those excess taxes to Howell Lumber; it entered a judgment for $4,944.99 in favor of Howell Lumber. The court also denied Howell Lumber's federal civil-rights claims and reserved ruling on the issue of attorney fees.
Both parties filed postjudgment motions. In addition, Howell Lumber sought to amend its complaint to seek relief on behalf of a class, under Rule 23(b)(2), Ala.R.Civ.P. The trial court's postjudgment order discussed an error in its calculation of the amount the City was required to refund to Howell Lumber, and the court entered an order amending its judgment, to award Howell Lumber only $1,620.77. The trial court also denied Howell Lumber's request for an award of attorney fees and its motion to amend the complaint to assert class claims. Both parties appealed.
The Court of Civil Appeals affirmed in part and reversed in part the trial court's judgment. The Court of Civil Appeals rejected the trial court's reasoning that § 2 should be construed to mean that although the Act did not apply to fire-district occupants such as Howell Lumber, the unamended version of §11-51-91 applied to those businesses. The Court of Civil Appeals criticized the trial court's holding because it would have meant that in calculating license taxes for fire-district occupants, a municipality "would have been required to calculate one portion of its collectible license fees under a common-law cost-benefit formula and one portion under a statutory aggregate-cost formula." 757 So.2d at 1178. The Court of Civil Appeals concluded, instead, that the Legislature, when it enacted § 2 of the Act, intended to relieve fire-district occupants from paying any license taxes to the City, so that such businesses would not have the duty to pay two authorities for fire protection. The Court of Civil Appeals reversed the judgment as to the construction of § 2 of the Act and directed the trial court to *Page 1187 
declare on remand that Howell Lumber was entitled to refunds of the entire amount of the license taxes it had paid the City under protest since 1992.
The Court of Civil Appeals also affirmed the trial court's denial of Howell Lumber's federal civil-rights claims and of its motion to amend its complaint to add class-action claims. In addition, it held that the trial court had correctly refused to award attorney fees, based on the general rule that a statutory allowance of "costs" does not include attorney fees. The court declined to address Howell Lumber's argument that Hart v. Jackson,607 So.2d 161 (Ala. 1992), which established a "trust" exception to this general rule, might be applicable; instead, that court invited this Court's review of that issue.
 II. The City's Petition (Case No. 1961569)
We first address the City's contention that the Court of Civil Appeals erred in construing § 2 of the Act to relieve fire-district occupants from paying any municipal license taxes whatever. The resolution of this issue will be determined by the effect we give to § 2 of the Act, which provides that the "Act shall not apply to [businesses] or homes [lying] within a fire district." The City contends that § 2 operates only to withhold application of the amendment to fire-district occupants. The effect of the City's interpretation would be to leave the original version of § 11-51-91 applicable to Howell Lumber and other fire-district occupants just as if the amendment had never been enacted. The City also contends that under the teaching ofReynolds Metals, it would not be required to limit the amount of the license taxes assessed against a fire-district occupant to an amount no greater than the cost of the municipal services rendered in the past to that business. According to Howell Lumber, however, it would be illogical to attribute to the Legislature an intent to create separate methods of computing the amount of license taxes for fire-district occupants and for businesses located only within police jurisdictions.
When the Legislature enacted the amendment, this Court was requiring a municipality to limit the amount of the license tax assessed against a business located in the police jurisdiction to an amount equal to, or less than, the cost of the municipal services rendered in the past to that business; hence, the existence of the different standards. The trial court agreed with the City and construed the amendment to § 11-51-91 to be inapplicable to a fire-district occupant; then, applying §11-51-91 in light of this Court's holding in Reynolds Metals, the trial court held that the City could assess a license tax upon Howell Lumber within the constraints of Reynolds Metals. The Court of Civil Appeals agreed with Howell Lumber and concluded that it would be absurd to hold that the Legislature intended under certain circumstances to have a municipality calculate certain of its collectible license fees under a common-law cost-benefit formula and others under a statutory aggregate-cost formula. The Court of Civil Appeals concluded that it was more likely that when the Legislature enacted § 2 of the Act, it intended to completely relieve fire-district occupants from the duty of paying municipal license taxes, rather than to establish two different rules for calculating license taxes in different parts of the same police jurisdiction. This analysis is faulty, for two reasons. First, it does not take into account the feasibility of an alternative approach, using calculations based on the common-law cost-benefit formula, to the issue of the fire-district occupants' vulnerability to the potential for double charges for fire protection. Second, it allows fire-district occupants to be exempt from the payment of any municipal license taxes, regardless of the degree to which they are provided municipal services.
The City contends, and we agree, that the Legislature had a logical, rational basis upon which it decided to require municipalities to calculate license taxes differently *Page 1188 
for fire-district occupants and for other businesses within their police jurisdictions. After this Court ruled in City of Leeds
that a municipality could not assess a license tax against a police-jurisdiction business in an amount greater than the cost of providing municipal services to that business, the Legislature amended § 11-51-91 so as to permit municipalities to compute license fees for police jurisdictions on an aggregate-cost basis. Nevertheless, recognizing that some businesses located in police jurisdictions also are located in, and pay taxes to, fire districts, the Legislature, in § 2, retained, for fire-district occupants only, the requirement that municipalities continue to calculate the license taxes on the cost-benefit basis. Under this rationale, fire-district occupants could be protected from double taxation for fire protection, while, at the same time, municipalities could continue to require those businesses to pay their pro rata share of the costs involved in providing them any other necessary municipal services that they actually used.
We conclude that § 2 of the Act is an exemption from taxation, and we adopt the trial court's literal interpretation of § 2, under which the effect of § 2 is to prevent the Act from applying to fire-district occupants. When competing reasonable constructions are advanced, a tax exemption should be construed in favor of the taxing authority, not the taxpayer. State v.Chesebrough-Ponds, Inc., 441 So.2d 598 (Ala. 1983). Accordingly, we reverse the judgment of the Court of Civil Appeals insofar as it construed § 2 of the amendatory legislation and issued instructions to the trial court.
We are left with an anomalous result if we apply subsequent decisional law to defeat the legislative purpose of permitting fire-district occupants to enjoy the common-law cost-benefit formula as a means of avoiding double liability for the costs of the duplicative services provided by both the fire district and the City. If this Court's holding in Reynolds Metals is applied so as to permit the City to calculate the license taxes due from fire-district occupants by the same method used to calculate the license taxes due from businesses located only in the police jurisdiction, then Howell Lumber and other fire-district occupants are once again relegated to the inequity that § 2 of the Act sought to cure. Such a result is unnecessary. When the Legislature enacts a statute based upon its knowledge of existing law, it is entitled to have that construction of law obtain in future interpretations of the law, subject to the limitation that the existing law not be later determined to violate the Constitution of the State of Alabama or the Constitution of the United States. See United Companies Lending Corp. v. McGehee,686 So.2d 1171, 1182 (Ala. 1996) (Houston, J., dissenting), cert.denied, 520 U.S. 1197 (1997); Siegelman v. Chase Manhattan Bank(USA), N.A., 575 So.2d 1041, 1044 (Ala. 1991). This Court did not overrule City of Leeds in Reynolds Metals because of a constitutional violation.
The result we reach today is not inconsistent with ReynoldsMetals, because that case did not deal with § 2 of the Act. When the Act was codified, § 2 was omitted. Consequently, the holdings in Reynolds Metals as to the codified version of § 11-51-91
do not apply to § 2 of the Act, because § 2 was not then before this Court.
We hold, therefore, that the Legislature intended that § 2 preserve the method of computation required by the line of cases that predates Reynolds Metals for license taxes assessed against fire-district occupants, and we remand for further proceedings based on the common-law cost-benefit formula.
 III. Howell Lumber's Petition (Case No. 1961581)
Howell Lumber contends that it should be allowed to recover attorney fees in this action as a part of its "costs," either *Page 1189 
pursuant to § 40-10-165 or pursuant to 42 U.S.C. § 1988.
Section 40-10-165 provides that a successful party in an action brought for a refund of taxes pursuant to §§ 40-10-160 et seq., Ala. Code 1975, may recover "such costs as may . . . be awarded, adjudged, or decreed." Howell Lumber maintains that the word "costs" in § 40-10-165 implicitly includes attorney fees and litigation costs. It relies upon Hart v. Jackson, supra, in which this Court held that the term "costs," as used in will-contest and estate-administration matters, includes attorney fees. 607 So.2d at 164. Howell Lumber asks this Court to adopt the same construction of "costs" for cases filed pursuant to § 40-10-165. We decline to extend the rule of Hart v. Jackson to cases involving tax refunds.
Alabama courts follow the "American Rule" regarding the payment of attorney fees by the losing party in a lawsuit to the prevailing party. Battle v. City of Birmingham, 656 So.2d 344
(Ala. 1995). Under Alabama law, attorney fees are recoverable as a part of the "costs" of an action only if they are authorized by statute, provided for by contract, or awarded through special equity, such as a situation in which a common fund is created from which fees may be paid. Id.; Hart v. Jackson, 607 So.2d at 163-64. See, e.g., City of Ozark v. Trawick, 604 So.2d 360 (Ala. 1992) (after taxpayers in a class action successfully challenged a municipal ad valorem tax, this Court held that because a common fund had been created from which attorney fees could be paid, the plaintiffs' attorneys were entitled to a fee from that common fund). Cases involving the recovery of taxes typically do not fall within any of the recognized exceptions to the American Rule, and we decline to create a new exception for taxation cases.
Section 1988 provides that attorney fees can be awarded only to the prevailing party in an action to enforce a provision of § 1983. Because Howell Lumber did not prevail in its § 1983 claims, attorney fees cannot be awarded in this case pursuant to § 1988.
 IV. Conclusion
We reverse the judgment of the Court of Civil Appeals as to its construction of § 2 of the Act, and we remand the cause for further proceedings consistent with this opinion. We affirm the Court of Civil Appeals' judgment in all other respects.
1961569 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
1961581 — AFFIRMED.
Hooper, C.J., and Maddox, Houston, See, Brown,* and Johnstone,* JJ., concur.
* Although Justices Lyons, Brown, and Johnstone were not members of this Court when these cases were orally argued, they have listened to the tape of oral argument.
[1] Alabama law permits certain rural areas outside a municipality's corporate limits to form fire districts, which are authorities responsible for maintaining volunteer fire departments funded by tax assessments on property within the fire district. See generally §§ 11-89-1 to -19, Ala. Code 1975.
[2] We note that the City of Prattville v. Joyner opinion relied on by the trial court was overruled, on other grounds, in a later appeal. See City of Prattville v. Joyner, 698 So.2d 122 (Ala. 1997).